UNITED STATES of America, Appellee,

v.

FARMERS LIVESTOCK AUCTION CO., an Iowa Corporation; William T. Aubrey, its President; Oelwein State Bank; Mosebach, Griffith, Simmer & Co.; Georgia Pacific;

Modernistic Manufacturing Co., Inc., Gary Thompson, its President, Appellant,

Livestock Market Insurance Agency, Inc.; Summit Insurance Co.; and Fayette County.

No. 81-1027.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 14, 1981.

Decided Oct. 21, 1981.

Cortland J. Silver, Jr. (argued), Douglas W. Thomson, St. Paul, Minn., for appellant.

James H. Reynolds, U. S. Atty., N. D. Iowa, Robert L. Teig, Asst. U. S. Atty. (argued), Cedar Rapids, Iowa, for appellee.

Before BRIGHT, HENLEY and ARNOLD, Circuit Judges.

HENLEY, Circuit Judge.

Defendant Gary Thompson appeals so much of the order of the district court [1] as grants summary judgment in favor of plaintiff and against Thompson. We affirm.

This foreclosure action was filed by the government on January 18, 1979, naming as defendants the mortgagor, Farmers Livestock Auction Co., and Gary Thompson. Thompson was joined to foreclose any interest he might have had in the subject property, located in Iowa, by virtue of a contract for sale entered into by plaintiff and Thompson on November 15, 1976, which described the property as "containing 48.55 acres more or less." It was acknowledged in the agreement that plaintiff did not yet have merchantable title of record but expected to obtain good title through the foreclosure proceeding now before this court. The contract obligated plaintiff to furnish an abstract of title and to take all necessary steps to furnish merchantable title within a reasonable time. Thompson, who went into possession shortly after executing the contract, was required to maintain all-risk and liability insurance, to pay all property taxes, and to evidence continued financial support upon request. It appears undisputed that Thompson failed to comply with such a request on June 29, 1977, that he never

[1] The Honorable Edward J. McManus, Chief Judge, United States District Court for the Northern District of Iowa.

carried any liability insurance, that he cancelled the all-risk insurance on June 29, 1977, that he failed to pay the property taxes, and that he abandoned the property sometime between August, 1977 and June, 1978. On August 31, 1979 the Small Business Administration redeemed the property at a county tax sale.

The complaint alleged that Thompson had breached the contract and that the contract had been forfeited pursuant to the agreement and the Iowa code,[2] and prayed that all defendants' interests be foreclosed. In his answer, Thompson denied the breach and the forfeiture and counterclaimed for damages based on plaintiff's alleged breach of the requirement to furnish an abstract and merchantable title.

Actual forfeiture was not initiated until December, 1979, and, perhaps because of an error in legal description, was not completed until May 19, 1980. On that same day, Thompson filed an amended answer seeking, in the alternative, rescission of the contract on the ground of mutual mistake, based on an alleged deficiency in acreage which, Thompson asserted, was not discovered until January 9, 1980.

Both parties filed motions for summary judgment and on September 15, 1980 the district court issued an order requiring both parties to submit statements of material disputed facts and accompanying briefs. Thompson alleged in his statement of facts, contrary to the assertion in his amended answer, that the alleged deficiency in acreage was discovered prior to, and was the reason for, his own default.

The district court found that the only fact issue related to Thompson's failure to receive an abstract of title. The resolution of this fact issue, however, was deemed immaterial in view of the completed forfeiture which, the court concluded, effectively divested Thompson of any interest in the contract. *Hunt Hardware Co. v. Herzoff*, 196 Iowa 715, 195 N.W. 264, 265 (1923). The completed forfeiture was also found to bar Thompson's claim for rescission. The court distinguished *Binkholder v. Carpenter*, 260 Iowa 1297, 152 N.W.2d 593, 596 (1967), relied on by Thompson, as involving an effective rescission prior to forfeiture. On December 9, the district court entered an order granting plaintiff's motion for summary judgment, denying defendant's motion for summary judgment, and dismissing defendant's counterclaims.

Thompson contends on appeal that material fact issues remain concerning plaintiff's failure to furnish an abstract and merchantable title, and that the forfeiture does not bar his claim for rescission based on mutual mistake.

With respect to plaintiff's alleged failure to furnish an abstract, we agree with the district court that to any extent plaintiff may have failed to comply with this provision, it was not a material breach placing plaintiff in default. Furthermore, the contract in this case clearly did not obligate plaintiff to furnish merchantable title before completion of the present foreclosure proceedings. On the other hand, plaintiff was obligated to furnish an abstract and to take all necessary steps to obtain merchantable title *within a reasonable time*. We note that over two years elapsed between the date of the contract and the filing of this foreclosure action. It is not necessary, however, to determine whether such a delay was unreasonable, since, in the circumstances, the delay was excused by Thompson's own substantial default.

Nor need we determine whether, under Iowa law, the forfeiture necessarily barred Thompson's claim for rescission,[3] since we

2. Iowa Code Ann. § 656.1 *et seq.* This statute provides an alternative remedy for vendors against purchasers in default. *See Abodeely v. Cavras*, 221 N.W.2d 494, 497–98 (Iowa 1974). In order to forfeit a contract, a vendor must serve notice on the purchaser specifying the default and allowing thirty days to perform. If the purchaser fails to perform within the thirty days, the vendor may file a copy of the notice and proof of service in the office of the county recorder. This filing completes the forfeiture process and serves as notice that the contract has been forfeited and cancelled.

3. Two Iowa Supreme Court cases which may shed light on this issue are *Binkholder v. Carpenter*, 152 N.W.2d at 596 (forfeiture did not

find no factual basis in the record to support Thompson's allegation of a substantial deficiency in acreage. The only evidence offered by Thompson to support this allegation appears to be the warranty deed, attached to Thompson's amended answer, from defendant Aubrey, president of defendant Farmers Livestock Auction Co., to Aubrey Livestock Co. Although this deed recites "fifteen acres, more or less," as the number of acres contained in the property, the legal description, which takes precedence, indicates under any fair analysis that the property contains approximately $45^{32}/_{33}$ acres.[4] Although the government failed to challenge this discrepancy, it appears to this court that Thompson has made no factual showing of any significant deficiency in acreage. In addition, even assuming some factual basis for the alleged deficiency, Thompson's claim for rescission is barred either by his own substantial default or by his failure to rescind promptly upon "discovering" the alleged deficiency. *See Binkholder v. Carpenter*, 152 N.W.2d at 597, 600.

We note that neither party in this case has been particularly diligent in pursuing claims, and both parties have shown a singular lack of curiosity about the facts and applicable law. Nevertheless, we conclude that plaintiff was entitled to, and did in fact, forfeit the contract, that defendant's claim for rescission is entirely without merit, and that plaintiff was entitled to summary judgment.

As relied on in brief and argument here, appellant's contentions concerning his motion for summary judgment and counterclaim are inextricably bound to his claim of breach by plaintiff and his assertion of rescission, both of which we have found lacking in merit. From what has been said, it follows that the order from which appeal was taken should be, and it is, affirmed.

bar prior rescission), and *Skubal v. Meeker*, 279 N.W.2d 23, 26–28 (Iowa 1979) (forfeiture did not bar subsequent equitable claim for reformation).

4. The description of the property in the Aubrey deed reads as follows:

Fifteen acres, more or less, in the Northeast (NE) corner of the Northeast Quarter (NE ¼) of Section Eighteen (18), of Township Ninety-one (91) North, Range Nine (9), West of the 5th P.M., Fayette County, Iowa, more particularly described as follows, to-wit: The Northeast Quarter (NE ¼) of said Section Eighteen (18), except the South Eighty (80) acres more or less, of said Northeast Quarter (NE ¼), excepting therefrom Beginning at the North Quarter corner of said Section Eighteen (18), thence South along the North-South Quarter line of said Section 18 a distance of 1320 feet, thence East at right angles a distance of 1123 feet, thence North at right angles a distance of 1320 feet, to the North line of Section 18, thence West along said North line of Section 18 to the point of beginning, containing 31.45 acres, more or less, excepting the Chicago Great Western Railway right of way crossing said parcel, and excepting also Commencing at the Northwest Corner of said Section 18, thence South along the West line of said Section 18 a distance of 1320 feet to the point of beginning, thence East a distance of 2470 feet to a point on the North-South Quarter line, said point being 1320 feet South of the North Quarter corner of said Section 18, thence continue on the last described course a distance of 1013 feet, thence South at right angles a distance of 1368.5 feet to the East-West Quarter line of said Section 18, thence West along said East-West Quarter line to the West Quarter corner of said Section 18, thence North along said West line of Section 18 a distance of 1331.2 feet to the point of beginning, containing 107.93 acres more or less, subject to easements of record.

The final exception, although indefinite in metes and bounds, does not appear to affect the North ½ of the Northeast Quarter, which contains the subject property. If Section 18 is regular in dimension, the description in the Aubrey deed appears to include $45^{32}/_{33}$ acres.